# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **LINNIE NICHOLS-DAVIS** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CAUSE NO. 1:09CV664 LG-RHW** |
| | § | |
| **COMMUNITY ELDERCARE SERVICES,** | § | |
| **LLC, and CLC OF BILOXI, LLC** | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are 1) the Motion for Summary Judgment [32] filed by Defendant Community Eldercare Services, LLC; and 2) the Motion for Summary Judgment [34] filed by Defendant CLC of Biloxi, LLC. The Plaintiff has responded in opposition to CLC's Motion, but concedes that Community Eldercare Services' Motion should be granted. After due consideration of the submissions and the relevant law, it is the Court's opinion that both Motions should be granted, as Plaintiff has failed to show that there is a question of material fact for the jury in regard to her employment discrimination claims.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Linnie Nichols-Davis began her employment with CLC of Biloxi, LLC, on January 28, 2008, as an RN Supervisor for the Rehabilitation and Special Care units at Biloxi Community Living Center. CLC terminated her employment slightly more than seven months later, on September 10, 2008, when she asked for an extended amount of time off for medical reasons but had no leave time available.

Her short tenure at CLC had not been trouble free. In July 2008, she requested additional staff for the Rehabilitation unit. This request was denied because she had not achieved the workload expectations of her position and her employer believed she should have been able to

manage the Rehabilitation unit without additional assistance. In August, she received written disciplinary action for "poor performance" regarding an incident in the Rehabilitation unit. The Administrator, R.J. Alipour noted that "the magnitood [sic] of this violation is great enough to let you know that any other violation will cause your termination." Ct.R. 34-6. On September 8, she presented a note from a physician stating that she was under his care beginning that day until November 1, 2008, and she would be able to return to work on November 1, 2008. Ct. R. 34-7. CLC terminated her on September 10. She testified that she was absent for about four weeks. Ct. R. 37-2 p. 97. Upon her return, CLC did not have any RN positions open and did not rehire her.

Plaintiff filed this lawsuit against the Defendants alleging racial discrimination and retaliation pursuant to Title VII and 42 U.S.C. § 1981, and a state-law claim of intentional infliction of emotional distress.

Defendant Community Eldercare Services, LLC, asks for summary judgment on the grounds that it was not Nichols-Davis's employer, and therefore cannot be liable to her under any of her theories. Plaintiff concedes in her response that this Defendant should be dismissed. Further, Plaintiff concedes her Title VII race discrimination claim[1] and state-law claim of intentional infliction of emotional distress are without merit. Accordingly, Community Eldercare Services is entitled to judgment as a matter of law in regard to all of Plaintiff's claims. CLC is entitled to judgment as a matter of law as to Plaintiff's Title VII race discrimination and state law intentional infliction of emotional distress claim. The only claims remaining are against CLC for

---

[1] Plaintiff states that "it is arguable that she did not suffer an adverse employment action [in] regard to the issues she complained of in her charge of discrimination, and did not file a charge of discrimination regarding her termination." Ct. R. 38 p. 4.

retaliation under Title VII and § 1981 and race discrimination under § 1981.

CLC has moved for summary judgment, contending first that Plaintiff has no evidentiary basis to support her claim that she was terminated because of her race, and therefore her § 1981 claim fails. CLC also contends that Plaintiff cannot establish a *prima facie* retaliation case, and that CLC had a legitimate, nonretaliatory reason for terminating her in any event.

DISCUSSION

Racial Discrimination:

The analysis of claims asserted under 42 U.S.C. § 1981 is identical to that under Title VII. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1). "In the context of Title VII litigation, we recognize two types of discrimination claims: disparate treatment and disparate impact." *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000). "Disparate treatment refers to deliberate discrimination in the terms or conditions of employment, . . . on account of race, national origin, or gender." *Id*. Plaintiff's claim here is one of disparate treatment.

"When plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). In order to help district courts make this determination, the U.S. Supreme Court has established a burden-shifting scheme for evaluating the claims at issue. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 n.3 (5th Cir. 2004). The order of proof proceeds as follows: (1) the plaintiff must

first demonstrate a *prima facie* case of discrimination; (2) then, if the plaintiff meets her burden, the defendant must rebut this case by producing a legitimate, nondiscriminatory reason for its actions; (3) lastly, if the defendant meets its burden, the presumption disappears, and the issue becomes discrimination *vel non*. *See Reeves*, 530 U.S. at 142. The plaintiff can establish disparate treatment by showing that the defendant's explanation for the employment action is a pretext for discrimination. *Id.* at 143. In other words, the plaintiff can meet her burden by showing that "the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Still, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

Because employment discrimination claims "involve nebulous questions of motivation and intent," summary judgment is generally an inappropriate tool for resolving these cases. *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640-41 (5th Cir. 1985) (citations omitted). However, if the plaintiff fails to establish a *prima facie* case, or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be properly granted. *Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir. 1994).

    1. *Plaintiff's Prima Facie Case*:

Plaintiff must prove four elements to make out a *prima facie* claim for racial discrimination: (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that she was replaced by

someone outside her protected class or that others similarly situated were treated more favorably. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

Plaintiff's *prima facie* case fails on the second prong. The Fifth Circuit has determined that a failure to report to work renders one unqualified for one's position, and accordingly unable to meet the initial burden of establishing a *prima facie* case of discrimination under Title VII. *Comeaux-Bisor v. YMCA of Greater Houston*, 290 Fed. Appx. 722, 726 (5th Cir. 2008) (citing *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998)). Accordingly, the Court finds that Plaintiff has failed to establish a *prima facie* case of racial discrimination.

    *2. CLC's Legitimate, Non-Discriminatory Reasons*:

Even if Plaintiff had established a *prima facie* case, she has nevertheless failed to show that she was terminated because of her race. CLC contends that it fired Plaintiff on September 10, 2008, because she had presented a physician's note indicating she needed to be off of work for two months, and she did not have any accumulated sick leave to excuse an absence of that length, nor was she eligible for FMLA leave. As RN Supervisor, she was responsible for supervising the nursing functions of the Rehabilitation unit. Her presence was necessary for proper day-to-day operation of the unit. Ct. R. 40-3 p. 2. When Plaintiff returned to her workplace after a month's absence, her position had been filled and there were no other RN openings. An employee's failure to report to work is a legitimate, non-discriminatory reason for her termination. *Comeaux-Bisor*, 290 Fed. Appx. at 726.

    *3. Plaintiff's Evidence of Pretext*:

Because CLC can articulate a legitimate, nondiscriminatory reason for firing Plaintiff, she

must present evidence that CLC's reason for firing her is a pretext for discrimination. She can show pretext either by showing that a discriminatory reason more likely motivated CLC or by showing that CLC's reason is unworthy of credence. *Burdine*, 450 U.S. at 256.

Plaintiff does not dispute that she took a lengthy absence from work and had neither sick leave nor FMLA leave available to her. She seems to argue that her presentation of a note from a doctor excused her absence. She also testified that Kathleen Powell (one of her supervisors) approved her absence by stating, "[t]ake care of yourself until you get better. We will see you when you get better." Ct. R. 37-2 p. 53. Powell did not tell Plaintiff that she could be absent for any particular amount of time. *Id.*

She argues that a discriminatory reason more likely motived CLC to terminate her employment because a Caucasian employee, the Quality Assurance nurse, was out on sick leave for six weeks and allowed to return, even though she had been hired a month and a half after the Plaintiff. *Id*. at 90-91. To show that a similarly situated employee was treated differently and that the difference in treatment is a pretext for discrimination, the conduct at issue must be "nearly identical." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995); *see also Polanco v. City of Austin, Tex.*, 78 F.3d 968, 977 (5th Cir. 1996) (reasoning that to show pretext, the "evidence ha[s] to contradict the legitimacy of the [employer's] explanation that the differences between [the two employees] justified" the difference in treatment). The employee must also be similarly situated to her comparator in the eyes of the employer's organization with respect to the employee's position in the organization and conduct. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000).

Plaintiff had no knowledge of the circumstances of the QA nurse's sick leave. Ct. R. 37-

2 p. 90-91. According to CLC, the QA nurse was allowed to take five weeks of sick leave to care for her terminally ill mother. Unlike Plaintiff, the QA nurse did not have any supervisory responsibility, nor did she provide any hands-on nursing care to residents. Ct. R. 40-3 p. 2. Her position was not terminated during her absence, because her daily attendance was deemed not essential to the day-to-day operations of the CLC. *Id*. at 3. The differences between Plaintiff's position and duties and the QA nurse's position and duties supports CLC's contention that it did not view the conduct at issue as "nearly identical." Plaintiff provides no evidence that these differences did not justify the difference in treatment by CLC.

Plaintiff next attempts to show pretext from a number of incidents that occurred during her employment at CLC. First, she complains she was overworked and her unit was understaffed, she was not allowed to move to an office near the nursing station in her unit, her supervisors never used any of her ideas for better operating the facility, nor did they take action on the disciplinary action forms she filled out concerning the nurse's aides, and the facility Administrator would use morning meetings to tell all of the supervisors and unit managers that they would be terminated if they did not help him "keep this budget down." Ct. R. 37-2 p. 80. To show pretext, the Plaintiff is required to provide evidence of a racial animus connected to these incidents. *Patel v. Midland Mem'l Hsop. & Med. Ctr*., 298 F.3d 333, 342-43 (5th Cir. 2002). Her subjective belief is not sufficient.

Next, she testified that black employees had to share offices, while white employees had their own offices. However, it is apparent from her subsequent testimony that CLC assigned offices based on job title or function. She could name no other RN Supervisor who had his or her own office. Also, her own experience contradicts her allegation that only blacks had to share

offices. She complains she was "thrown out" of an office she shared with two other unit supervisors - a Caucasian and a Filipino. The three of them were removed so that the office could be used by the Caucasian QA nurse.

She also testified that the Director of Nursing told her she should terminate four workers, all Africa-Americans, and when she did not, "everything started to go downhill." *Id.* at 102-03, 128. However, Plaintiff further testified that as a unit supervisor, she had no authority to hire or fire any worker. Plaintiff's testimony about these experiences at the Biloxi Community Living Center do not show that she was subjected to racial discrimination.

The only incident related to race occurred during a meeting or confrontation with an NAACP representative in the facility. *Id*. at 119. Powell was called in and told the small group gathered there, including Plaintiff, that they "were acting like typical ni -." *Id*. at 119, 129. Powell refused to finish her sentence.

> [I]n order for comments in the workplace to provide sufficient evidence of discrimination, they must be "(1) related [to the protected class of persons of which the plaintiff is a member]; (2) proximate in time to the [complained-of adverse employment decision]; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue"

*Patel*, 298 F.3d at 343-44 (alterations in original) (quoting *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000)).

The Court assumes that Powell's unfinished comment related to African-Americans. It occurred on September 4, shortly before Plaintiff requested leave time and was terminated. However, Plaintiff does not show that Powell had authority over the decision to terminate her employment. Plaintiff testified that the Director of Nursing did the hiring and firing, and in fact

hired her. Plaintiff assumed she was fired by the Administrator. Ct. R. 37-2 p. 46. Powell "would not call me to return to work." *Id*. Even if Powell had authority to fire Plaintiff, Powell's comment had nothing to do with Plaintiff's termination. Plaintiff was present simply as a witness for the meeting between the NAACP representative, another employee, and Powell. *Id*. at 118-119. Plaintiff's employment was not at issue, and Powell's comment was not related to anyone's employment. Accordingly, the Court finds this comment to be insufficient evidence of discrimination.

Plaintiff is unable to create a question of material fact for the jury with the evidence presented in support of her Section 1981 racial discrimination claim. CLC is therefore entitled to summary judgment.

Retaliation:

In retaliation cases, the plaintiff must first make the following *prima facie* showing: (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir. 2009).

Plaintiff alleges she was retaliated against "for reporting findings of racial discrimination by Defendants." Compl. 4 (¶19). She testified that she is referring to an incident where an African-American Certified Nurse's Assistant, who worked in the Rehabilitation unit, had applied for an office personnel position. Plaintiff questioned the Administrator about why the CNA had not gotten the position. The Administrator threatened her "with termination at that point and told me to stay out of his office, don't come to him with any other complaints or don't come to him with anything else in reference to that." Ct. R. 37-2 p. 83-84, 127. Plaintiff does

not identify when this incident took place, but argues it was temporally proximate.

It is a violation of Title VII and § 1981 if employers retaliate against employees who complain about discrimination. *Ikossi-Anastasiou*, 579 F.3d at 551; *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003). Close timing between an employee's protected activity and an adverse action against her may provide the "causal connection" required to make out a *prima facie* case of retaliation. *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993). However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.

> Employers are sometimes forced to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace. This is especially true for hospitals providing serious medical care to patients. Precedent does not prevent a hospital from removing such an employee simply because the employee engaged in a protected work activity months prior.

*Strong v. Univ. Healthcare Sys.*, *L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

The evidence shows that Plaintiff was terminated because she did not report to work for four weeks in violation of CLC's work rules, and the daily presence of an RN Supervisor was required for CLC to run its facility. The fact that she presented a note from her doctor stating that she could not work for two months does not exempt her from the consequences flowing from her violation of CLC's work rules. *Hoogstra v. W. Asset Mgmt., Inc.*, 560 F. Supp. 2d 515, 524 (E.D. Tex. 2006). Plaintiff has provided no evidence of pretext from which a reasonable juror could infer retaliation. Therefore, her claim fails.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [32] filed by Defendant Community Eldercare Services, LLC, and the Motion for

Summary Judgment [34] filed by Defendant CLC of Biloxi, LLC, are **GRANTED**. Plaintiff's claims against these Defendants are **DISMISSED** with prejudice.

**SO ORDERED AND ADJUDGED** this the 9th day of August, 2010.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE